#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA L. T., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )    Case No. 24-cv-00560-SH |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

#### OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lisa L. T. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.  Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits, with a protective filing date of April 14, 2021. (R. 221–23.) In her application, Plaintiff alleged she has been unable to work since December 21, 2019, due to conditions including osteoarthritis of the right wrist, a mini stroke (transient ischemic attack), lower back problems, a torn rotator cuff on the right shoulder, right arm problems, anxiety, depression, and issues with both eyes. (R. 222, 287.) Plaintiff was 65 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 30, 222.) Plaintiff has a high school education and past relevant work as a fast-foods worker, a shift manager, and a sales manager. (R. 288, 60–61.)

Plaintiff's claim was denied initially. (R. 105–09.) On reconsideration, however, Plaintiff was found not disabled prior to March 1, 2022, but disabled from that date onward. (R. 88, 118–20.) Plaintiff then requested and received a hearing before an ALJ. (R. 121–22, 36–78.) Considering the entire disability period—including the period after March 2022 that had previously been granted—the ALJ denied benefits and found Plaintiff not disabled. (R. 17–30.) The Appeals Council denied review on September 18, 2024 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

3

### III. The ALJ's Decision

In their decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2024. (R. 20.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 21, 2019. (*Id.*) At step two, the ALJ found Plaintiff to have the following severe impairments: (1) degenerative changes of the lumbar spine with compression fracture at L2-4, scoliosis, and diagnosis of sciatica and radiculopathy; (2) impingement of the right shoulder with arthritis and rotator cuff tear; (3) right wrist fracture with malunion, status-post open reduction and internal fixation; and (4) obesity. (R. 20–22.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 22.)

The ALJ then determined that Plaintiff had the RFC to perform light work with the following exertional and postural limitations:

> [The claimant] cannot reach overhead with the right, dominant upper extremity and can reach frequently in all other directions as well as frequently handle and finger. Additionally, the claimant can frequently climb, stoop, kneel, crawl, and crouch.

(*Id.*) The ALJ provided a recitation of the evidence that went into this finding. (R. 22–29.) Based on this evidence—and the testimony of a vocational expert ("VE")—the ALJ then found at step four that Plaintiff was capable of performing her past relevant work ("PRW") as a shift manager as generally performed. (R. 29–30; *see also* R. 60–61, 74–76.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 30.)

## IV. Issues

On appeal, Plaintiff asserts a single point of error, arguing the ALJ failed to support RFC limitations with either a proper legal analysis or substantial evidence.[2] (Dkt. No. 15 at 5–10.[3]) The Court disagrees and affirms.

## V. Analysis

### A. RFC Assessment & Step-Four Findings

In their decision, the ALJ ended the sequential analysis at step four, finding Plaintiff capable of performing her PRW as a shift manager. (R. 29–30.)

#### 1. The RFC

To proceed to steps four and five, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e); *see also Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (while the "record must demonstrate that the ALJ considered all of the evidence," he "is not

---

[2] Plaintiff's Complaint alleges multiple other purported errors. (Dkt. No. 2.) The Court, however, does not consider arguments not contained in the parties' briefs. *See* Supp. R. for Social Security, R. 5 ("The action is presented for decision by the parties' briefs."). The "district court serves as a first-tier appellate court in social security cases." *Allen v. Comm'r of Soc. Sec. Admin.*, No. CIV-20-042-JFH-KEW, 2021 WL 1133150, at *3 n.2 (E.D. Okla. Mar. 1, 2021), *R&R adopted,* 2021 WL 1123613 (E.D. Okla. Mar. 24, 2021) (citation modified). As such, the court generally declines "to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief," and "the omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (collecting cases).

[3] Citations to page numbers refer to those in the Court-provided header.

required to discuss every piece of evidence," only that which supports his decision, as well as "the uncontroverted evidence he chooses not to rely upon" and "the significantly probative evidence he rejects"). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).

As Social Security Ruling 96-8p clarifies, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, at *3 (July 2, 1996). The analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* at *7.

  **2. Step Four**

Generally, after considering the RFC, the ALJ assesses a claimant's ability to return to PRW at step four. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ makes this finding in three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, the ALJ evaluates the claimant's physical and mental RFC. *Id.* In phase two, the ALJ examines the demands of the claimant's PRW. *Id.* And in the final phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* Plaintiff's sole challenge is to the ALJ's assessment of her physical RFC in phase one.

  **B. Sufficiency of the Evidence & Proper Legal Analysis**

Here, the ALJ reached the at-issue RFC by considering the requisite categories of evidence and discussing how Plaintiff's impairments affected her functional capabilities.

6

(R. 23–29.) Particularly, the ALJ considered (1) evidence from nonmedical sources such as Plaintiff and her husband (R. 23–24, 29); (2) medical evidence of record, including the results of objective exams (R. 24–27); and (3) consultative examinations and medical opinions (R. 25–29). On appeal, Plaintiff points to evidence the ALJ largely considered, but argues that it should have been discussed in greater detail or that "common sense" necessitated the ALJ reach a different decision. Neither argument is persuasive.

### 1. Evidence the ALJ considered

Plaintiff highlights two MRI's and other evidence she claims the ALJ failed to discuss sufficiently. (Dkt. No. 15 at 6–8.)

Regarding a 2023 MRI of Plaintiff's lumbar spine, she argues the ALJ's "minimal discussion of that study . . . omitted any mention of its additional findings . . . ." (*Id.* at 6 (citing R. 479–80).) But, as Plaintiff recognizes, the ALJ addressed this imaging. (R. 25 (noting it showed "diffuse degenerative disc disease with a compression fracture from L2-4 with scoliosis").) Moreover, from the ALJ's reasoning, the Court can follow how this evidence supported their conclusions. (*See, e.g.*, R. 20 (degenerative changes of lumbar spine with compression fractures at L2-4 found to be a severe impairment), R. 25 (MRI noted in discussion of evidence at RFC stage), R. 26–27 (lumbar impairments discussed in comparison with activities of daily living, and "spinal impairment" noted as necessitating light work limitations).) Plaintiff does not argue that restating the entire MRI finding would have resulted in greater functional limitations than those the ALJ assigned. Nor does she argue that the remainder of the MRI is evidence the ALJ chose not to rely on or otherwise rejected. Thus, since it is clear the ALJ considered it as part of the RFC assessment, the ALJ did not err.

The same is true of the 2020 right shoulder MRI that Plaintiff argues should have been restated in full. (Dkt. No. 15 at 6–7 (citing R. 634–35).) Again, the ALJ explicitly discussed this imaging. (R. 25 (recounting the massive tear of Plaintiff's rotator cuff).) Plaintiff argues other portions of the MRI "should have certainly at least warranted discussion in evaluating [her] purported capacities for" light work (Dkt. No. 15 at 7), but this is what the ALJ did. He found Plaintiff had a severe "impingement of the right shoulder with arthritis and rotator cuff tear" (R. 20), and then considered how it affected her functioning—

> [T]he undersigned has considered the objective medical findings as well as the other evidence . . . . [T]he undersigned finds that the claimant's . . . <u>right upper extremity conditions</u> allow for lifting and carrying of no more than 20 pounds. Furthermore, her right shoulder impingement precludes overhead [reaching][4] and with her right shoulder and wrist abnormalities reduce her ability to handle and finger to frequent with the right upper extremity.

(R. 27 (emphasis added).) This is all that is required.

The Court is further unpersuaded by Plaintiff's reference to various objective exam results the ALJ only "partially recite[d]." (Dkt. No. 15 at 7–8.) As the ALJ largely discussed this evidence (R. 24–25[5]), and as the ALJ relied on sufficient medical and non-

---

[4] The decision uses the phrase "overhead hearing" (R. 27), but this appears to be a typographical error, as the RFC refers to Plaintiff's inability to "reach overhead" with her right extremity (*see* R. 22).

[5] (*See, e.g.*, R. 24 (discussing exam where Plaintiff presented with tenderness and spasm over the lumbar spine, decreased range of motion, and antalgic gait, as well as tenderness and weakness over the right shoulder (citing R. 424–41)); *id.* (discussing Plaintiff's right arm fracture prior to her alleged disability onset date (citing R. 368–72, 378, 473–78)); R. 25 (discussing exam where Plaintiff presented with right hip pain with flexion, inability to heel or toe walk, full range of motion in the lumbar spine, and mild instability in standing and ambulating that did not necessitate an assistive device (citing R. 463–67)); *id.* (discussing exam where Plaintiff presented with decreased lumbar range of motion and decreased motor strength with right hip flexion (citing R. 499–508)).)

medical evidence to support his RFC conclusions (*see, e.g.*, R. 26–27), the assessment followed the proper legal standards.

### 2. Common sense

Lastly, Plaintiff argues "the ALJ's findings regarding her purported abilities to perform" light work "and her past relevant work as a shift manager were not factually reasonable given the evidence as a whole and therefore [are] also not supported by substantial evidence." (Dkt. No. 15 at 8.) For this argument, Plaintiff recounts her broad range of impairments and concludes that "common sense would be sufficient to show" that the ALJ's RFC finding "was simply not reasonable." (*Id.* at 8–9.) Common sense does not dictate such a result. As noted above, the ALJ assessed the evidence of Plaintiff's numerous physical impairments and determined what functional capacity remained. The evidence cited was such as a reasonable mind might accept as adequate to support the ALJ's conclusion. There was substantial evidence supporting the ALJ's decision. Plaintiff is asking the Court reweigh the evidence and reach a different conclusion, which the Court cannot do. *See Bowman*, 511 F.3d at 1272. Plaintiff's arguments are, therefore, rejected.

### C. Consideration of Osteopenia and Mild Obstructive Lung Disease

Plaintiff also notes in passing that the ALJ failed to "acknowledge [Plaintiff's] December 2023 pulmonary function testing showing mild obstructive lung disease or DEXA scan revealing osteopenia (with a future risk of osteoporosis)." (Dkt. No. 15 at 8 (citing R. 486–88, 490).) Plaintiff seems to imply these could "impact her capacity for

9

and safety when standing and walking" (*id.*), but she does not develop this argument.[6] In any event, Plaintiff has shown no error resulting from any failure to note these records.

The first record is merely a 2023 routine bone density screening for an asymptomatic postmenopausal patient. (R. 487.) The scan found osteopenia, and the doctor recommended dietary changes, exercise, vitamin supplementation, and a repeat scan in 1–2 years. (R. 486–88.) No functional limitations were noted in this record.

The second record is a 2023 pulmonary function study. (R. 490.) Plaintiff "was found to have mild obstructive lung disease with good response to bronchodilator, the total lung capacity was within normal limits, no restrictive lung disease, the DLCO was within normal limits, [and] the flow volume loops were within normal limits." (*Id.*) No functional limitations were noted in this record; instead, the record appears to rule out such limitations.

By asking the Court to find harmful error, Plaintiff is asking the Court to take a number of leaps in reasoning. First, she impliedly asks the Court to find, based on these two records, that the ALJ erred in failing to find Plaintiff suffered from additional medically determinable impairments. *See* 20 C.F.R. § 404.1521. Second, she asks the Court to conclude that the ALJ erred in failing to find these impairments and their related symptoms caused physical limitations that affect what Plaintiff could do in a work setting. *See id.* § 404.1545(a)(1); *see also id.* § 404.1545(a)(2) (noting the ALJ considers all medically determinable impairments, whether severe or not). Such physical abilities might include sitting, standing, walking, lifting, carrying, pushing, pulling, or other

---

[6] The Court could disregard the argument on this basis alone. *See Sturgeon v. Colvin*, No. 15-CV-52-PJC, 2016 WL 1248905, at *5 (N.D. Okla. Mar. 29, 2016) ("[a] Social Security claimant must adequately develop arguments before a district court" (citing *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)).

physical functions such as manipulative or postural functions. *Id*. § 404.1545(b). Plaintiff does this without even positing what such specific limitations might be, much less providing support in the record for her arguments.

As such, Plaintiff has given the Court no basis to discount the ALJ's statement that they considered the entire record, including the exhibits containing these two medical tests. (R. 18, 22.) *See also Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"). Plaintiff further has given the Court no basis to find that these tests constituted evidence the ALJ was required to discuss. *See Clifton*, 79 F.3d at 1009–10. There was no error here.

Finally, even if the ALJ had failed to consider the evidence of these two tests, the Court finds such error would be harmless. No reasonable factfinder, following the correct analysis, could have found any functional limitations from these records. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 5th day of March, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT